[counsel are identified in the signature
block of this document]

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF WASHINGTON, DEPARTMENT OF ECOLOGY,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY, a Delaware Corporation, the LOCKHEED MARTIN CORPORATION, a Maryland corporation, and the CITY OF MOSES LAKE,<br><br>Defendants. | Nos.  CV-10-457 & CV-10-459<br><br><br><br>CONSENT DECREE |

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................ 3

II.     JURISDICTION ................................................................................ 6

III.    PARTIES BOUND ............................................................................ 6

IV.     DEFINITIONS .................................................................................. 6

V.      GENERAL PROVISIONS .............................................................. 12

VI.     REMEDY REVIEW ....................................................................... 15

VII.    ACCESS AND INSTITUTIONAL CONTROLS ........................... 15

VIII.   CERTIFICATION OF COMPLETION .......................................... 19

IX.     EMERGENCY RESPONSE ........................................................... 20

X.      PAYMENT FOR RESPONSE COSTS ........................................... 20

XI.     DISPUTE RESOLUTION ............................................................... 27

XII.    STIPULATED PENALTIES .......................................................... 35

XIII.   COVENANTS BY PLAINTIFFS ................................................... 38

XIV.    COVENANTS BY SETTLING DEFENDANTS AND
        SETTLING FEDERAL AGENCIES ............................................... 47

XV.     EFFECT OF SETTLEMENT; CONTRIBUTION ........................... 50

XVI.    CERTIFICATION OF SETTLING DEFENDANTS AND
        RETENTION OF RECORDS .......................................................... 52

XVII.   NOTICES AND SUBMISSIONS ................................................... 53

XVIII.  RETENTION OF JURISDICTION ................................................ 55

XIX.    APPENDICES ................................................................................. 56

XX.     COMMUNITY RELATIONS ......................................................... 56

XXI.    MODIFICATION ............................................................................ 57

XXII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..... 57

XXIII.  SIGNATORIES/SERVICE ............................................................. 57

XXIV.   FINAL JUDGMENT ...................................................................... 58

# I. BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") and the Secretary of the United States Army, on behalf of the United States Army Corps of Engineers ("Corps"), has, concurrently with the lodging of this Consent Decree, filed a complaint (the "Complaint") in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607.  Defendants in this action are the City of Moses Lake ("City" or "Moses Lake"), The Boeing Company ("Boeing"), and Lockheed Martin Corporation ("Lockheed Martin"), which are collectively referred to herein as the "Settling Defendants."

B.    The United States in its Complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA, the Corps, and the Department of Justice for response actions at the Moses Lake Wellfield Superfund Site in Grant County, Washington, together with accrued interest; and (2) pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), a "declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs." Id.

C.    The State of Washington (the "State") has also concurrently filed a complaint against the Settling Defendants and the United States in this Court alleging that they are liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and the Model Toxics Control Act (MTCA), RCW 70.105D, for past response costs, a declaratory judgment on liability, and future response costs.

D.    This Consent Decree resolves the claims of the United States against the Settling Defendants, and of the State against the Settling Defendants and the United States, and is the final judgment for both of those actions.  This Consent Decree also specifies the terms on which the Moses Lake Litigation (as defined

below) is to be resolved.  To effectuate this outcome, concurrent with the filing of the United States' Complaint, the State's complaint, and this Consent Decree, the parties to this Consent Decree will file a joint motion to consolidate the cases brought by the United States and the State.  The State previously resolved the State's claim against the City under Section 107(a) of CERCLA, 42 U.S.C. § 9607 pursuant to a 2007 consent decree between the State and the City filed in State of Washington, Department of Ecology v. City of Moses Lake, U.S. Dist. Ct. E.D. Wash. No. 05-CV-182-FVS.

E. In 2004 the City filed litigation (defined in Section IV below as "Moses Lake Litigation") against the United States, Boeing, and Lockheed Martin under Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613.

F. There has been no claim by the United States or any other party that the Settling Defendants or their agents or employees have violated or failed to comply with any law, contract, regulation or order, committed any wrongful acts, or are liable for any fine or penalty with respect to the Site.  The Settling Defendants do not admit any liability to the United States, the State, or any other party arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.  The Settling Federal Agencies, as defined in Section IV, do not admit any liability arising out of the transactions or occurrences alleged in any claim or counterclaim asserted by the Settling Defendants or the State.

G. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register.  57 Fed. Reg. 47,180, 47,184 (Oct. 14, 1992).

H.    In response to a release or a substantial threat of a release of one or more hazardous substances at or from the Site, the Corps commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.    The Corps completed the RI/FS Reports in April 2007.

J.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the Feasibility Studies and of the proposed plan for remedial action in June 2007, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

K.    The decision by EPA on the remedial action to be implemented by EPA at the Site is embodied in an interim Record of Decision ("ROD"), executed on September 30, 2008, on which the State has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).  The funding mechanisms established pursuant to this Consent Decree will enable EPA to implement the ROD for the Moses Lake Site.

L.    During the Moses Lake Litigation, extensive discovery was conducted by the parties.  Based on that discovery, and responses received by EPA to requests for information pursuant to CERCLA section 104(e), 42 U.S.C. 9604(e), there is no clear evidence that Settling Defendants used, stored, and/or disposed of more than minimal quantities, if any, of hazardous substances at the Site.

M.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and

will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607 and 9613(b).  This Court has supplemental jurisdiction over the State's claim under MTCA, RCW 70.105D, pursuant to 28 U.S.C. § 1367.  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and the State, and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"Boeing" shall mean defendant The Boeing Company.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XIX).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Corps" shall mean the United States Army Corps of Engineers and any successor departments, agencies, or instrumentalities of the United States.

"Day" shall mean a calendar day unless expressly stated to be a Working Day.  "Working Day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next Working Day.

"Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies, or instrumentalities of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the Effective Date in developing or reviewing plans, reports, and other documents while performing the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 8 (Notice to Successors-in-Title), Sections VI (Remedy Review), VII (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls

Consent Decree                               7

including, but not limited to, the amount of just compensation), IX (Emergency Response), and Section XX (Community Relations). Future Response Costs shall also include all Interim Response Costs.

"Institutional Controls" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that EPA has identified in a decision document to: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Materials at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior in response to risks posed by Waste Materials at the Site.

"Interim Response Costs" shall mean all costs incurred by the United States prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Lockheed Martin" shall mean defendant Lockheed Martin Corporation and its predecessors.

"Moses Lake" or "City" shall mean defendant City of Moses Lake.

"Moses Lake Litigation" shall mean the litigation brought by the City of Moses Lake against the United States, Boeing, and Lockheed Martin in the United States District Court, Eastern District of Washington, in City of Moses Lake v. United States, et al., Case no. CV-04-0376-LRS, including any counterclaims or cross-claims.

"Moses Lake Appeal" shall mean the appeal arising out of the Moses Lake Litigation filed by the City of Moses in the United States Court of Appeals for the Ninth Circuit, Case No. 07-35053.

"Moses Lake Litigants" are the City of Moses Lake, Boeing, Lockheed Martin, and the United States.

"Moses Lake Non-Federal Litigants" are the City of Moses Lake, Boeing, and Lockheed Martin.

"Moses Lake Wellfield Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3).

"MTCA" shall mean the Washington State Model Toxics Control Act, Revised Code of Washington (RCW) Chapter 70.105D.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan developed by EPA pursuant to the Record of Decision ("ROD").

"Owner Settling Defendants" shall mean The Boeing Company and the City of Moses Lake collectively, each of them being an "Owner Settling Defendant."

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the State, and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through the Effective Date, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards, other measures of achievement of the goals of the Remedial Action, and all actions determined by EPA to be necessary, whether contingent or not, set forth in Section 2.11 of the ROD.

"Plaintiffs" shall mean the United States and the State.

"Proprietary Controls" shall mean one or more documents granting easements and/or other covenants that run with the land and that (a) limit land, water or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 30, 2008, by the Regional Administrator, EPA Region 10, or his/her delegate, and all attachments thereto.  Any factual allegations regarding the history of activities at the Site contained in the Record of Decision are not incorporated into this Consent Decree.

"Remedial Action" shall mean all activities, except for Operation and Maintenance, to be undertaken to implement the Record of Decision, in accordance with plans approved by EPA.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Lockheed Martin Corporation, The Boeing Company, and the City of Moses Lake.

"Settling Federal Agencies" shall mean the United States Department of Defense, the United States Department of the Air Force, and the United States Army (including, but not limited to, the United States Army Corps of Engineers).

"Site" shall mean the Moses Lake Wellfield Superfund Site listed on the National Priorities List at 57 Fed. Reg. 47,180, 47,184 (Oct. 14, 1992), located near the City of Moses Lake, in Grant County, Washington, and generally depicted on the map attached as Appendix A.

"State" shall mean the State of Washington and all of its agencies, including, but not limited to, the Washington State Department of Ecology.

"State Future Response Costs" shall mean costs incurred by the State of Washington DOE after the Effective Date that are not inconsistent with the NCP under 42 U.S.C. § 9607 (a)(4)(A).

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agencies, and any federal natural resources trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); (4) any "hazardous substance" under MTCA, RCW 70.105D.020(10); and (5) any "dangerous waste", "hazardous waste", and "hazardous substance" under the Hazardous Waste Management Act, RCW 70.105.010 (5), (14), and (15).

"Work" shall mean all activities required to be performed in order to implement the September 30, 2008 Record of Decision, including Operation and Maintenance.

## V.  GENERAL PROVISIONS

4.    <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Consent Decree are to protect public health, welfare, and the environment at the Site by fully funding performance of the Work, which implements the Record of Decision, through creation and funding of the Moses Lake Wellfield Special Account; to reimburse certain response costs of the United States, the State, and the City of Moses Lake; to resolve the claims of the United States against Settling Defendants; to resolve the claims of the State against Settling Defendants and the United States; and to resolve the claims of the Settling Defendants which have been or could have been asserted against the Plaintiffs and other Settling Defendants with regard to this Site, as provided in this Consent Decree.

5.    <u>Commitments by Settling Defendants and Settling Federal Agencies</u>. Settling Defendants shall make payments to the Moses Lake Wellfield Special Account for Past Response Costs and Future Response Costs as provided in this Consent Decree.  The United States, on behalf of the Settling Federal Agencies, shall make payments to the Moses Lake Wellfield Special Account for Future Response Costs, and to the State for State Future Response Costs, as provided in this Consent Decree.

6.    <u>Compliance With Applicable Law</u>.  All activities undertaken pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations, including compliance with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD.  The activities conducted pursuant to this Consent Decree, if approved or undertaken by EPA, shall be considered to be consistent with the NCP.

7.  <u>Permits</u>.

a.  As provided in Section 121(e) of CERCLA. 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).

b.  This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

8.  <u>Successors-in-Title</u>.

a.  For any real property that is a part of the Site and that is owned or controlled by an Owner Settling Defendant, that Owner Settling Defendant shall, within 30 days after the Effective Date, record with the appropriate land records office a notice attached hereto as Appendix E in order to provide a description of the real property owned by that Owner Settling Defendant and to provide notice to all successors-in-title that the real property is part of the Site, that EPA has selected a remedy for the Site, and that potentially responsible parties have entered into a Consent Decree enabling implementation of the remedy.  The Owner Settling Defendant shall provide EPA with a certified copy of the recorded notice(s) within ten days of recording such notice(s).

b.  Each Owner Settling Defendant shall, at least 60 days prior to any transfer of any real property that is a part of the Site and that is owned by that Owner Settling Defendant, give written notice: (i) to the transferee regarding the Consent Decree and any Institutional Controls that apply to the real property; and (ii) to EPA and the State regarding the proposed transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

Consent Decree                        13

c.      Each Owner Settling Defendant may transfer any real property that is a part of the Site and that is owned by that Owner Settling Defendant after (1) Proprietary Controls, if any, required by Paragraph 13.c have been recorded with respect to the real property to be transferred; or (2) Owner Settling Defendant has obtained an agreement from the transferee, enforceable by the United States, to (i) allow access and restrict land/water use, pursuant to Paragraph 13.a, (ii) record any Proprietary Controls on the real property, pursuant to Paragraph 13.c, and (iii) subordinate its rights to any such Proprietary Controls, pursuant to Paragraph 13.c, and EPA has approved the agreement in writing.  If, after a transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph 8.c, Owner Settling Defendant shall take all reasonable steps to obtain the transferee's compliance with such agreement.  The United States may seek the transferee's compliance with the agreement and/or assist Owner Settling Defendant in obtaining compliance with the agreement.

d.      In the event of any transfer of all or any part of the real property located at the Site, unless the United States otherwise consents in writing, Owner Settling Defendants shall continue to comply with their obligations under this Consent Decree, including, but not limited to, their obligation to provide access, to implement, maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

9.      Nothing in this Decree is intended to be an admission of any fact, nor agreement by any party hereto, nor waiver of any right, with regard to whether any sum paid hereunder is allowable, allocable, or reasonable for purposes of pricing, cost reimbursement, or any financial aspect related to costs under any contract with the United States.

## VI.  REMEDY REVIEW

10.    <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.  The State shall review such further response actions as provided in Section 121 of CERCLA, 42 U.S.C. § 9621.  Consistent with this Court's order at 416 F.Supp.2d 1015, EPA shall afford the City the opportunity to participate in the planning and selection of such further response actions.

11.    <u>Opportunity To Comment</u>.  The Settling Federal Agencies, Settling Defendants, the State, and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §§ 9613(k)(2) or 117, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and to submit written comments for the record during the comment period.

## VII.  ACCESS AND INSTITUTIONAL CONTROLS

12.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

13.    Each of the Owner Settling Defendants that owns or controls any part of the Site ("Owner's Land"), or any other real property where access or land/water use restrictions are needed in order to implement this Consent Decree, shall, with respect to that Owner's Land:

a.    commencing on the Effective Date, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Owner's Land, subject to the terms of Subparagraph

13.e below, for the purpose of implementing any response actions selected in the ROD, as modified by any explanation of significant differences (ESD) or ROD amendment, including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations regarding contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents;

(9)     Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(10)    Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b.      commencing on the Effective Date, refrain from using that Owner's Land in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere

with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. EPA acknowledges that the City uses property it owns within the Site as part of its operation of a municipal water supply system and of a wastewater treatment system. A remedial action objective of EPA's selected remedy is restoring groundwater to meet federal drinking water standards and state cleanup standards. EPA believes that current operation of the City's municipal water supply and waste water treatment systems will not interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. EPA further acknowledges that Boeing owns, occupies, and uses a number of buildings at the Site ("Boeing's Buildings"). EPA currently believes that the continued ownership, occupancy, and use of Boeing's Buildings and real property at the Site will not interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. If circumstances change, EPA and Owner Settling Defendants agree to work together to formulate and implement a course of action to avoid such interference with or adverse effects on the implementation, integrity, or protectiveness of the Remedial Action. If EPA and an affected Owner Settling Defendant are unable to agree upon a course of action to avoid such interference with or adverse effects on the implementation, integrity, or protectiveness of the Remedial Action, EPA's determination as to the appropriate course of action regarding the Remedial Action shall govern, subject to any affected Owner Settling Defendant's right to invoke Dispute Resolution under Section XI.

        c.    Prior to any transfer of all or a part of Owner's Land, EPA shall review and approve draft Proprietary Controls that will provide for the rights and obligations set forth in Paragraphs 13 a. and b, which such Owner Settling Defendant shall submit in substantially the form attached hereto as Appendix F. Upon approval from EPA, such Owner Settling Defendant shall execute and record

the Proprietary Controls in the appropriate land records office during or before such transfer.

       d.    EPA will coordinate its use of the right of access provided in this Paragraph 13 with Owner Settling Defendants to ensure that interference with an Owner Settling Defendant's use and enjoyment of its property is minimized to the extent practicable.  During such coordination, Owner Settling Defendants may provide EPA with any written health and safety policies regarding Owner's Land at the Site.

       e.    With respect to the exercise of all rights of access granted by an Owner Settling Defendant in this Consent Decree, subject to Paragraphs 12 and 15 of this Consent Decree, the rights shall be exercised after reasonable advance written notice and in compliance with any applicable federal requirements, including any applicable federal requirements regarding security clearances or export controls.  If EPA desires to obtain access to any of Boeing's Buildings containing classified equipment or materials, EPA personnel security representatives and Boeing's personnel security representatives will confer in advance to ensure that EPA's employees and representatives, including contractors, have the applicable security clearances for entry into areas containing such classified equipment or materials.  Unless otherwise agreed upon, access under this Paragraph to all properties other than Boeing's Buildings shall be provided no later than 5 calendar days after receipt of the notice regarding access, and access to Boeing's Buildings shall be provided no later than 14 calendar days after receipt of the notice regarding access.  In addition, EPA intends to coordinate access with Boeing to minimize risk of harm to its proprietary interest, and EPA acknowledges when it exercises its right of access to Boeing's property that it may generate records that may contain confidential business information (CBI). Following access, EPA will provide Boeing with copies of generated records and

will provide Boeing with an opportunity to identify records that Boeing desires EPA to treat as CBI.

14.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Owner Settling Defendants shall provide information requested by EPA with respect to such Institutional Controls and shall not oppose EPA's and the State's efforts to secure and ensure compliance with such governmental controls.

15.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## VIII.  CERTIFICATION OF COMPLETION

16.     <u>Completion of the Remedial Action</u>.

a.     Within 90 days after EPA concludes that the Remedial Action has been fully performed and the Performance Standards have been achieved, EPA shall schedule and conduct a pre-certification inspection to be attended by any Party who so desires.

b.     If EPA concludes, following the pre-certification inspection, and after a reasonable opportunity for review and comment by any Party who so desires, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XIII (Covenants by Plaintiff).  Certification

of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

17. <u>Completion of the Work</u>.

a. Within 90 days after EPA concludes that all phases of the Work, other than any remaining activities required under Section VI (Remedy Review), have been performed, EPA shall schedule and conduct a pre-certification inspection to be attended by any Party who so desires.

b. If EPA concludes, following the pre-certification inspection, and after a reasonable opportunity for review and comment by any Party who so desires, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Parties in writing.

## IX.  EMERGENCY RESPONSE

18. Subject to Section XIII (Covenants by Plaintiff), nothing in this Consent Decree shall be deemed to limit any authority of the United States or the State a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## X.  PAYMENT FOR RESPONSE COSTS

19. <u>Payments by Settling Defendants</u>.  Within 30 days of the Effective Date, each Settling Defendant shall pay to the EPA Hazardous Substance Superfund and the Corps the amounts set forth in Appendix B for each Settling Defendant in payment for Past Response Costs and Future Response Costs.  Each payment shall be made in accordance with Paragraphs 20.a and 20.c (Payment Instructions).  The amounts paid by each Settling Defendant to the EPA Hazardous

Substance Superfund shall be deposited by EPA in the Moses Lake Wellfield Special Account, to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     20.   <u>Payment Instructions for Settling Defendants</u>.

        a.   <u>Instructions for Past Response Costs Payments and Future Response Costs Prepayments</u>.  All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 20.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Washington after the Effective Date.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number for the Moses Lake Wellfield Special Account, which shall be used to identify all payments required to be made to the Moses Lake Wellfield Special Account in accordance with this Consent Decree.  The FLU shall provide the payment instructions to the individual identified in Appendix B for each Settling Defendant.  Settling Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change in accordance with Section XVII (Notices and Submissions).

        b.   <u>Instructions for Stipulated Penalty Payments</u>.  All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 20.b shall be made by Fedwire EFT to:

                        Federal Reserve Bank of New York
                        Account = 68010727
                        SWIFT address = FRNYUS33
                        33 Liberty Street
                        New York NY 10045
                        Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency, Site 10H9"

c.    Instructions for All Payments.  All payments made under Paragraph 20.a or 20.b shall reference the CDCS Number, EPA Site/Spill ID Number 10H9 and DOJ Case Number 90-11-2-1040/1.  At the time of any payment required to be made in accordance with Paragraphs 20.a or 20.b, Settling Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XVII (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the CDCS Number, Site/Spill ID Number 10H9, and DOJ Case Number 90-11-2-1040/1.

21.    In the event that the payments required by Paragraph 19 are not made within 30 days of the Effective Date, any Settling Defendant that fails to make its payments when required shall pay Interest on its unpaid balance.  The Interest to be paid under this Paragraph on any unpaid balance shall begin to accrue on the Effective Date.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 43.

Payments on behalf of the Settling Federal Agencies

22.    The United States, on behalf of the Settling Federal Agencies, shall fund the costs of the Work not otherwise funded by the Settling Defendants' payments to the Moses Lake Wellfield Special Account, as follows:

23.    Initial payments.  As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall:

a.    Pay $20,000,000 to fund initial expenditures of Future Response Costs.  This payment shall be deposited in the Moses Lake Wellfield

Special Account within the EPA Hazardous Substance Superfund by Electronic Funds Transfer in accordance with instructions to be provided by EPA, to be retained and used to conduct or finance response actions at or in connection with the Site.

      b.    Pay to the Settling Defendant City of Moses Lake $2,961,531.97  in reimbursement of the City of Moses Lake's past response costs and the City's claim for attorneys' fees and costs, by Electronic Funds Transfer in accordance with instructions to be provided by the City of Moses Lake.  The City shall provide payment instructions to the Section Chief of the Environment Division's Environmental Defense Section at the address in Section XVII (Notices and Submissions**).**

    24.    In the event that the payments required by Paragraph 23 are not made within 120 days of the Effective Date of this Consent Decree, Interest on the unpaid balance shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the effective date of this Consent Decree and accruing through the date of the payment.

    25.    <u>Annual Payment to EPA of Future Response Costs</u>.  On an annual basis, the United States, on behalf of the Settling Federal Agencies, shall fund EPA's Future Response Costs as follows:

      a.    On or before each December 30 after the Effective Date of this Decree, EPA shall notify the Section Chief of the Environment Division's Environmental Defense Section at the address in Section XVII (Notices and Submissions) whether for the coming year EPA anticipates Future Response Cost expenditures will exceed $350,000.

      b.    In the event that EPA anticipates Future Response Costs of $350,000 or more for the coming year, this shall be known as a "Prepayment Condition."  EPA shall certify by January 31 of the following year, to the Section

Chief of the Environment Division's Environmental Defense Section, the amount of costs it anticipates to incur that are not inconsistent with the National Contingency Plan. This shall be known as the "Prepayment Certification." In developing its Prepayment Certification, EPA shall set off against the amount of response costs that EPA expects to incur for the coming year Unexpended Funds. For the purpose of this Paragraph, Unexpended Funds are any funds that are in the Moses Lake Wellfield Special Account within the EPA Hazardous Substance Superfund, excluding funds from prior reimbursements of EPA's indirect costs under Paragraphs 23 or 25. If there are no Unexpended Funds in the Moses Lake Wellfield Special Account within the EPA Hazardous Substance Superfund, EPA shall add to the Prepayment Certification for the coming year any unreimbursed response costs that EPA has expended for the Work. This request shall be accompanied by a Superfund Cost Organization Recovery Package Imaging Online System ("SCORPIOS") report or similar cost summary in scope and detail to justify EPA's estimates of the costs to implement the Work for the coming year. The Prepayment Certification shall be in a form sufficient to meet applicable federal financial requirements.

       c.     As soon as reasonably practicable after receipt of a Prepayment Certification, the United States, on behalf of the Settling Federal Agencies, shall pay the amount set forth in the Prepayment Certification to the Moses Lake Wellfield Special Account within the EPA Hazardous Substance Superfund, to be retained and used to conduct or finance response actions at or in connection with the Site.

       d.     If the notice referred to in Paragraph 25(a) above states that EPA anticipates Future Response Costs of less than $350,000, this shall be known as a "Repayment Condition." In that circumstance, payment shall be deferred until EPA has completed the work to be done during the coming calendar year.

Following completion of the work for coming calendar year, on or before March 30 of the following calendar year, EPA shall send to the Section Chief of the Environment Division's Environmental Defense Section an invoice for the amount of Future Response Costs during that calendar year. This invoice shall be accompanied by an appropriate certification (the "Repayment Certification"). The Repayment Certification shall be in a form sufficient to meet applicable federal financial requirements.

       e.    As soon as reasonably practicable after receipt of a Repayment Certification, the United States, on behalf of the Settling Federal Agencies, shall pay the amount set forth in the Repayment Certification to the Moses Lake Wellfield Special Account within the EPA Hazardous Substance Superfund, to be retained and used to conduct or finance response actions at or in connection with the Site.

       f.    Payments made pursuant to this paragraph shall be made to the Moses Lake Wellfield Special Account within the EPA Hazardous Substance Superfund by electric funds transfer in accordance with instructions provided by EPA.  In the event that the payments required by this Paragraph are not made within 120 days of receipt of the Prepayment Certification or the Repayment Certification, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the date of receipt of the Prepayment Certification or the Repayment Certification and accruing through the date of the payment.  All certifications shall include the CDCS Number, EPA Site/Spill ID Number 10 H9 and DOJ Case Numbers 90-11-2-1040/1 and 90-11-6-17387.

      26.   <u>Disputes Regarding Claimed EPA Future Response Costs</u>.  Any disputes regarding any payments required to be made in this Consent Decree by the United States, on behalf of the Settling Federal Agencies, to the Moses Lake

Wellfield Special Account within the EPA Hazardous Substance Superfund shall not be subject to Dispute Resolution by any Party or otherwise reviewable or enforceable by the Court, but shall be resolved between EPA and the Settling Federal Agencies, with the assistance of the U.S. Department of Justice as necessary.

27.     If the payments to the EPA Hazardous Substances Superfund required by Paragraphs 23(a) and 25 are not made as soon as reasonably practicable, the appropriate EPA Regional Branch Chief may raise any issues relating to payment to the appropriate DOJ Assistant Section Chief for the Environmental Defense Section.

28.     If the payments to the EPA Hazardous Substances Superfund required by Paragraphs 23(a) and 25 are not made as soon as reasonably practicable, the State may also raise any issues related to payment to the appropriate DOJ Assistant Section Chief for the Environmental Defense Section.

29.     <u>Reimbursement of State Future Response Costs</u>.  On an annual basis, following the Effective Date, the State shall send to the United States an invoice, together with a Repayment Certification substantially identical to that described in Paragraph 25(d), for the State Future Response Costs that were paid by the State in the prior calendar year ending on December 31.  As soon as reasonably practicable after receipt of the State's Repayment Certification, the United States, on behalf of the Settling Federal Agencies, shall pay the amount set forth in the Repayment Certification by electronic funds transfer (EFT) in accordance with instructions provided by State.  In the event that the payments required by this Paragraph are not made within 120 days of receipt of the Repayment Certification, Interest on the unpaid balance shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the date of receipt of the Repayment Certification and accruing through the date of the payment.

30.    <u>Disputes regarding claimed State Future Response Costs</u>.  Any disputes between the United States, on behalf of the Settling Federal Agencies, and the State regarding payments to be made pursuant to Paragraph 29 shall be resolved pursuant to Paragraphs 39-43 of Section XI (Dispute Resolution).

31.    The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agencies under this Consent Decree can only be paid from appropriated funds legally available for such purpose.  Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

32.    <u>Balance of Special Account Funds</u>.  After EPA issues its written Certification of Completion of the Work pursuant to this Consent Decree, and after EPA completes all disbursements regarding the Work, if any funds remain in the Moses Lake Wellfield Special Account, EPA may transfer such funds to the Hazardous Substance Superfund.  Any transfer of funds to the Hazardous Substance Superfund shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

## XI.  DISPUTE RESOLUTION

33.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.  An Owner Settling Defendant may invoke Dispute Resolution under this Consent Decree only for disputes pertaining to

Owner Settling Defendant's compliance with the requirements of Section VII (Access and Institutional Controls). Nothing in this Section shall be construed as extinguishing or diminishing any right of each respective Party to enforce any provision of this Consent Decree or to resolve any dispute arising from or with respect to this Consent Decree in Court in the event that the Dispute Resolution procedures provided for herein do not apply to such provision or dispute.

34.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

Disputes Between the United States and Settling Defendants

35.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, a Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant. The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 36 or Paragraph 37.

b.     Within 60 days after receipt of a Settling Defendant's Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that

position and all supporting documentation relied upon by EPA.  The State may also serve on a Settling Defendant a Statement of Position within the time that EPA's Statement of Position is due.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 36 or 37.  Within 30 days after receipt of EPA's Statement of Position, the Settling Defendant may submit a Reply.

c.     If there is disagreement between EPA and a Settling Defendant as to whether dispute resolution should proceed under Paragraph 36 or 37, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if a Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 36 and 37.

36.     <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to EPA determinations concerning the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by a Settling Defendant regarding the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may

allow submission of supplemental statements of position by the parties to the dispute.

       b.     The Director of the Office of Environmental Cleanup, EPA Region 10, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 36.a.  This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 36.c and 36.d.

       c.     Any administrative decision made by EPA pursuant to Paragraph 36.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to the Settling Defendant's motion.

       d.     In proceedings on any dispute governed by this Paragraph, a Settling Defendant shall have the burden of demonstrating that the decision of the Director of the Office of Environmental Cleanup is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 36.a.

     37.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

       a.     Following receipt of a Settling Defendant's Statement of Position submitted pursuant to Paragraph 35, the Director of the Office of Environmental Cleanup, EPA Region 10, will issue a final decision resolving the

dispute.  The Office of Environmental Cleanup Director's decision shall be binding on the Settling Defendant unless, within 10 days of receipt of the decision, the Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to the Settling Defendant's motion.

      b.    Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

    38.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of a Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise, except that stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 50.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree to which stipulated penalties apply.  In the event that a Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XII (Stipulated Penalties).

    <u>Disputes Between the United States, on behalf of the Settling Federal Agencies, and the State</u>

    39.    The following provisions of Section XI (Dispute Resolution) pertain to disputes between the United States, on behalf of the Settling Federal Agencies, and the State regarding the recoverability of State Future Response Costs claimed by the State in a Repayment Certificate under Section X (Payment For Response

Costs).  The following provisions apply if the United States, on behalf of the Settling Federal Agencies, and the State are unable to resolve informally such a dispute as provided in Paragraph 34.

      40.  <u>Statements of Position</u>.

      a.  In the event that the United States, on behalf of the Settling Federal Agencies, and the State cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by the State in the Repayment Certification shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, the United States, on behalf of the Settling Federal Agencies, invokes the formal dispute resolution procedures of this Section by serving on the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the United States, on behalf of the Settling Federal Agencies.  The Statement of Position shall specify the United States' position as to whether formal dispute resolution should proceed under Paragraph 41 or Paragraph 42.

      b.  Within 60 days after receipt of the Settling Federal Agencies' Statement of Position, the State will serve on the United States, on behalf of the Settling Federal Agencies, its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the State.  Within 30 days after receipt of the State's Statement of Position, the United States, on behalf of the Settling Federal Agencies, may submit a Reply.

      c.  If there is disagreement between the United States, on behalf of the Settling Federal Agencies, and the State as to whether dispute resolution should proceed under Paragraph 41 or 42, the parties to the dispute shall follow the procedures set forth in the paragraph determined by the State to be applicable.

However, if the United States, on behalf of the Settling Federal Agencies, ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 41 and 42.

41.    <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by the State and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, the State may allow submission of supplemental statements of position by the United States, on behalf of the Settling Federal Agencies, and the State.

b.    The Toxics Cleanup Program Manager, Washington State Department of Ecology, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 41.a.  This decision shall be binding upon the Settling Federal Agencies, subject only to the right to seek judicial review pursuant to Paragraphs 41.c and 41.d.

c.    Any administrative decision made by the State pursuant to Paragraph 41.b shall be reviewable by this Court, provided that a motion for

judicial review of the Toxics Cleanup Program Manager decision is filed by the United States, on behalf of the Settling Federal Agencies, with the Court and served on all Parties within 60 days of receipt of the State's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The State may file a response to the United States' motion.

        d.    In proceedings on any dispute governed by this Paragraph, the Settling Federal Agencies shall have the burden of demonstrating that the decision of the Toxics Cleanup Program Manager is arbitrary and capricious or otherwise not in accordance with law. Judicial review of the State's decision shall be on the administrative record compiled pursuant to Paragraph 41.a.

        42.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.    Following receipt of the Statements of Position submitted pursuant to Paragraph 40, the Toxics Cleanup Program Manager, Washington State Department of Ecology, will issue a final decision resolving the dispute. The Toxics Cleanup Program Manager's decision shall be binding on the Settling Federal Agencies unless, within 60 days of receipt of the decision, the United States, on behalf of the Settling Federal Agencies files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The State may file a response to the United States' motion.

b.    Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

43.    The provisions of Section XII (Stipulated Penalties) shall not apply to any dispute between the United States, on behalf of the Settling Federal Agencies, and the State.

## XII.  STIPULATED PENALTIES

44.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 45 and 46 to the United States for failure to comply with the requirements of this Consent Decree specified below. "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree within the specified time schedules established by and approved under this Consent Decree.

45.    Stipulated Penalty Amounts - Payments.  The following stipulated penalties shall accrue per violation per day to an individual Settling Defendant that fails to timely pay the amount it is required to pay as set forth in Paragraph 19:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000.00 | 1st through 14th day |
| $2,000.00 | 15th through 30th day |
| $3,000.00 | 31st day and beyond |

46.    Stipulated Penalty Amounts - Institutional Controls.  The following stipulated penalties shall accrue per violation per day to an individual Owner Settling Defendant for failure to timely perform the obligations of the Owner Settling Defendant in Paragraphs 8 and 13-14:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th day |
| $1,000.00 | 15th through 30th day |
| $1,500.00 | 31st day and beyond |

47.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a decision by the Director of the Office of Environmental Cleanup, EPA Region 10, under Paragraph 36.b or 37.a of Section XI (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that the Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (2) with respect to judicial review by this Court of any dispute under Section XI (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

48.    Following EPA's determination that a Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give the Settling Defendant written notification of the same and describe the noncompliance.  EPA may send the Settling Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a violation.

49.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of a Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless the Settling Defendant invokes the

Dispute Resolution procedures under Section XI (Dispute Resolution) within the 30-day period.  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraphs 20.b and 20.c (Payment Instructions).

50.    Penalties shall continue to accrue as provided in Paragraph 47 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, the Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, the Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

51.    If a Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings against that Settling Defendant to collect the penalties and Interest.

52.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of a Settling Defendant's violation of this

Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

53.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

### XIII.  COVENANTS BY PLAINTIFFS

Covenants By The United States

54.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under this Consent Decree, and except as specifically provided in Paragraph 59 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and 9613, relating to the Site.  These covenants not to sue shall take effect for each individual Settling Defendant upon the receipt by EPA and the Corps of the payments required by Paragraph 19 (Payments for Response Costs) by the individual Settling Defendant.  These covenants not to sue as to a Settling Defendant are conditioned upon the satisfactory performance by the Settling Defendant of its obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

55.     In consideration of the payments that will be made by the United States on behalf of Settling Federal Agencies under this Consent Decree, and except as specifically provided in Paragraphs 56, 57, and 59, EPA covenants not to take administrative action against Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), relating to the Site.

Except with respect to future liability, EPA's covenant shall take effect upon the receipt by EPA of the payments required by Paragraph 23.a (Payments by Settling Federal Agencies) and any Interest due thereon under Paragraph 24. With respect to future liability, EPA's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 17.b of Section VIII (Certification of Completion). EPA's covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Decree. EPA's covenant extends only to Settling Federal Agencies and does not extend to any other person.

56. United States' Pre-certification Reservations. Notwithstanding any other provision of this Consent Decree, EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies to perform further response actions relating to the Site, and/or to pay EPA for additional costs of response, if

      (a)    prior to Certification of Completion of the Remedial Action

            (i)    conditions at the Site, previously unknown to EPA, are discovered, or

            (ii)   information, previously unknown to EPA, is received, in whole or in part, and

      (b)    EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

57. United States' Post-certification Reservations. Notwithstanding any other provision of this Consent Decree, EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies to perform

further response actions relating to the Site, and/or to pay EPA for additional costs of response, if

    (a)    subsequent to Certification of Completion of the Remedial Action

        (i)    conditions at the Site, previously unknown to EPA, are discovered, or

        (ii)    information, previously unknown to EPA, is received, in whole or in part, and

    (b)    EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

58.    For purposes of Paragraph 56, the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 57, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.  Factual statements in the ROD are not incorporated by reference into this Consent Decree, and if the ROD or other documents in the administrative record contain incorrect information regarding the historical activities at the Site relating to any of Settling Defendants or the Settling Federal Agencies, those

statement in the ROD are excluded from the "information and conditions known to EPA" for purposes of this Consent Decree.

59.    <u>General reservations of rights</u>.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within the United States' covenant. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and EPA reserves, and this Consent Decree is without prejudice to, all rights against the Settling Federal Agencies, with respect to:

   a.    claims based on a failure by Settling Defendants or the Settling Federal Agencies to meet a requirement of this Consent Decree;

   b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

   c.    liability based on the ownership or operation of the Site by Settling Defendants or Settling Federal Agencies when such ownership or operation commences after signature of this Consent Decree;

   d.    liability based on Settling Defendants' or Settling Federal Agencies' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered or conducted by EPA, after signature of this Consent Decree;

e.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f.    criminal liability;

g.    liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

h.    with respect to the Settling Federal Agencies only, liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that are not consistent with the scope of the remedy selected in the ROD.

60.    Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

Covenants By The State

61.    In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under this Consent Decree, and except as specifically provided in Paragraph 66 of this Section, the State covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and 9613, and MTCA, RCW 70.105D, relating to the Site. These covenants not to sue shall take effect for each individual Settling Defendant upon the receipt by EPA and the Corps of the payments required by Paragraph 19 (Payments for Response Costs) by the individual Settling Defendant. These covenants not to sue as to a Settling Defendant are conditioned upon the

satisfactory performance by the Settling Defendant of its obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

62.     In consideration of the payments that will be made by the United States on behalf of Settling Federal Agencies under this Consent Decree, and except as specifically provided in Paragraphs 63, 64, and 66, the State covenants not to sue or take administrative action against the United States pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and 9613, and MTCA, RCW 70.105D, relating to the Site.  Except with respect to future liability for State Future Response Costs, the State's covenant shall take effect upon the receipt by EPA of the payment required by Paragraph 23(a).  With respect to future liability, the State's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 17.b of Section VIII (Certification of Completion).  The State's covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Decree.  The State's covenant extends only to the United States and does not extend to any other person.

63.     State's Pre-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel the Settling Federal Agencies to perform further response actions relating to the Site, and/or to pay the State for additional costs of response, subject to any defenses, including limitations based on the United States' waiver of sovereign immunity, to the extent such waiver applies, if

(a)     prior to Certification of Completion of the Remedial Action

       (i)      conditions at the Site, previously unknown to the State, are discovered, or

       (ii)     information, previously unknown to the State, is received, in whole or in part, and

    (b)    EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

64.    <u>State's Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel the Settling Federal Agencies to perform further response actions relating to the Site, and/or to pay the State for additional costs of response, subject to any defenses, including limitations based on the United States' waiver of sovereign immunity, to the extent such waiver applies, if

    (a)    subsequent to Certification of Completion of the Remedial Action

       (i)      conditions at the Site, previously unknown to the State, are discovered, or

       (ii)     information, previously unknown to the State, is received, in whole or in part, and

    (b)    EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

65.     For purposes of Paragraph 63, the information and the conditions known to the State will include only that information and those conditions known to the State as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 64, the information and the conditions known to the State shall include only that information and those conditions known to the State as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.  Factual statements in the ROD are not incorporated by reference into this Consent Decree, and if the ROD or other documents in the administrative record contain incorrect information regarding the historical activities at the Site relating to any of Settling Defendants or the Settling Federal Agencies, those statement in the ROD are excluded from the "information and conditions known to EPA" for purposes of this Consent Decree.

66.     <u>General reservations of rights</u>.  The State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants and the Settling Federal Agencies with respect to all matters not expressly included within the State's covenant.  Notwithstanding any other provision of this Consent Decree, the State reserves all rights against Settling Defendants and the Settling Federal Agencies, with respect to:

> a.    claims based on a failure by Settling Defendants or the Settling Federal Agencies to meet a requirement of this Consent Decree;
>
> b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

     c.     liability based on the ownership or operation of the Site by Settling Defendants or Settling Federal Agencies when such ownership or operation commences after signature of this Consent Decree;

     d.     liability based on Settling Defendants' or Settling Federal Agencies' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered or conducted by EPA, after signature of this Consent Decree;

     e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

     f.     criminal liability;

     g.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

     h.     With respect to the Settling Federal Agencies only, liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that are not consistent with the scope of the remedy selected in the ROD.

67.    Notwithstanding any other provision of this Consent Decree, the State retains all authority and reserves all rights to take any and all response actions authorized by law.

## XIV.  COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

68.    Covenant Not to Sue by Settling Defendants.  Subject to the reservations in Paragraphs 70 and 71, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Site or this Consent Decree, including, but not limited to:

      a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law; or

      b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, 42 U.S.C. §§ 9607 or 9613, regarding the Site and this Consent Decree; or

      c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Washington State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

69.    Covenant by Settling Federal Agencies.  Settling Federal Agencies agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site and this Consent Decree. This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other

than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

70.    Except as provided in Paragraph 73 (Waiver of Claims Against Other Potentially Responsible Parties) and Paragraph 78 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State brings a cause of action or issues an order pursuant to any of the reservations in Paragraphs 59 or 66 of Section XIII (Covenants by Plaintiffs), other than in Paragraphs 59.a or 66.a (claims for failure to meet a requirement of the Decree), 59.f or 66.f (criminal liability), and 59.g or 66.g (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims and/or the Settling Federal Agencies' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

71.    Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or development or approval of plans, reports, other deliverables or activities.  Settling Defendants also reserve, and this Consent Decree is without prejudice to, contribution claims against Settling Federal

Agencies in the event any claim is asserted by the United States or the State against Settling Defendants pursuant to any of the reservations in Paragraphs 59 or 66 of Section XIII (Covenants by Plaintiffs) other than in Paragraphs 59.a or 66.a (claims for failure to meet a requirement of the Decree), 59.f or 66.f (criminal liability), and 59.g or 66.g (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

72.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

73.    Settling Defendants agree not to assert any claims or causes of action (including claims for contribution under CERCLA or MTCA) that they may have for all matters relating to the Site against any other person who is a potentially responsible party under CERCLA or MTCA at the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts or has asserted a claim or cause of action relating to the Site against such Settling Defendant.

74.    All Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against each other with respect to the Site or this Consent Decree.  The Moses Lake Litigants further agree to resolve the Moses Lake Litigation in its entirety, as follows:

a.    The Moses Lake Litigants shall, within thirty days after entry of this Consent Decree, fully execute and file a stipulation in the form attached hereto as Appendix C requesting dismissal with prejudice of the Moses Lake Litigation.   Except as expressly provided elsewhere in this Consent Decree, each of the Moses Lake Litigants shall bear its own fees and costs;

b.      The City and Lockheed Martin shall, within thirty days after entry of this Consent Decree, fully execute and file a stipulated motion in the form attached hereto as Appendix D requesting that the United States Circuit Court of Appeals for the Ninth Circuit issue an order dismissing the Moses Lake Appeal;

c.      The Moses Lake Non-Federal Litigants hereby mutually release, generally and specifically, now and forever, any and all claims or causes of action, whether known or unknown, suspected or unsuspected, that each has or may have against the other that were asserted, or could have been asserted, in the Moses Lake Litigation.

d.      The Moses Lake Litigants agree to cooperate fully in taking any other action that is required to obtain a complete termination and dismissal with prejudice of the Moses Lake Litigation and the Moses Lake Appeal.

## XV.  EFFECT OF SETTLEMENT; CONTRIBUTION

75.      Except as provided in Paragraph 73 (Waiver of Claims Against Other Potentially Responsible Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraph 73 (Waiver of Claims Against Other Potentially Responsible Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States or the State, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), and MTCA, RCW 70.105D, to pursue any such persons to obtain additional response costs or response action and to enter

into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

76.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant and each Settling Federal Agency is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), MTCA, RCW 70.105D.040(4)(d), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, the State, or any other person; provided, however, that if the United States or the State exercises rights against a Settling Defendant (or if EPA or the State assert rights against Settling Federal Agencies) under the reservations Section XIII (Covenants by Plaintiffs), other than in Paragraphs 59.a or 66.a (claims for failure to meet a requirement of the Decree), 59.f or 66.f (criminal liability), and 59.g or 66.g (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree as to the Settling Defendant will no longer include those response costs or response actions that are within the scope of the exercised reservation.

77.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within ten days of service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States and the State within ten days of service or receipt of any Motion for Summary Judgment and within ten days of receipt of any order from a court setting a case for trial.

78.    <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants (and, with respect to a State action, Settling Federal Agencies) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XIII (Covenants by Plaintiffs).

## XVI.  CERTIFICATION OF SETTLING DEFENDANTS AND RETENTION OF RECORDS

79.    Each Settling Defendant certifies, individually, that, to the best of its knowledge and belief, after a reasonable inquiry that fully complies with the Federal Rules of Civil Procedure, it:

a.    has fully and accurately disclosed or offered to make available to the United States and the State all information currently in its possession, or in the possession of its officers, directors, employees, contractors or agents, which relates in any way to the ownership, possession, generation, treatment, transportation, storage or disposal of a hazardous substance, pollutant, or contaminant at or in connection with the Site;

b.    has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents, or other information relating to its potential liability regarding the Site since the earlier of notification of potential liability or the filing of a suit against it regarding the Site; and

Consent Decree                    52

      c.      has complied fully and will comply fully with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

80.     The United States acknowledges that each Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all EPA requests for information concerning the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

## XVII. NOTICES AND SUBMISSIONS

81.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, Settling Federal Agencies, the State, and Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:       Chief, Environmental Enforcement Section
                               Environment and Natural Resources Division
                               U.S. Department of Justice
                               P.O. Box 7611
                               Washington, D.C.  20044-7611
                               Re: DJ # 90-11-2-1040/1

                               Chief, Environmental Defense Section
                               Environment and Natural Resources Division
                               U.S. Department of Justice
                               P.O. Box 23968
                               Washington, D.C.  20026-3986
                               Re: DJ # 90-11-6-17387

As to EPA:                     Director, Division Office of Environmental
                               Cleanup
                               United States Environmental Protection Agency
                               Region 10
                               1200 Sixth Avenue
                               Seattle, WA  98101

                               Rod Lobos
                               EPA Project Coordinator
                               United States Environmental Protection Agency
                               Region 10
                               309 Bradley Blvd., Suite 115
                               Richland, WA  98352

                               Ted Yackulic
                               Office of Regional Counsel
                               United States Environmental Protection Agency
                               Region 10
                               1200 Sixth Avenue
                               Seattle, WA  98101

As to The Boeing Company:      Steven E. Rusak
                               The Boeing Company
                               P.O. Box 3707 MC 7A-XP
                               Seattle, WA 98124-2207

                               Mark W. Schneider
                               Perkins Coie, LLP
                               1201 Third Avenue
                               Suite 4800
                               Seattle, WA  98101-3099

| | |
|---|---|
| <u>As To Lockheed Martin</u><br><u>Corporation:</u> | Michael J. Kramer<br>Vice President and Deputy General Counsel<br>Lockheed Martin Space Systems Company<br>Post Office Box 179, M/S 5120<br>Denver, CO 80201 |
| | Robert W. Loewen<br>Gibson, Dunn & Crutcher<br>3161 Michelson Drive<br>Irvine, CA 92612 |
| <u>As to the City of Moses Lake:</u> | City Manager<br>City of Moses Lake<br>South 321 Balsam Street<br>P.O. Drawer 1579<br>Moses Lake, WA  98837-0244 |
| | Marten Law PLLC<br>1191 Second Avenue<br>Suite 2200<br>Seattle WA 98101<br>Attn:  Linda Larson<br>        Bradley Marten |
| <u>As to the State of Washington,</u><br><u>Department of Ecology</u>: | Barry Rogowski<br>Toxics Cleanup Program<br>Dept. of Ecology<br>300 Desmond Drive SE<br>Lacey, WA 98503 |
| | Michael Dunning<br>Assistant Attorney General<br>2425 Bristol Ct SW<br>Olympia, WA 98504-0117 |

## XVIII.  RETENTION OF JURISDICTION

82.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XI (Dispute Resolution).  The Court

Consent Decree                           55

shall not have jurisdiction to review or enforce requirements in this Consent Decree that run between EPA and the Settling Federal Agencies or disputes between EPA and the Settling Federal Agencies pertaining to such requirements.

## XIX.  APPENDICES

83.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the description and/or map of the Site.

"Appendix B" is the schedule of payments for each Settling Defendant

"Appendix C" is the stipulation for dismissal with prejudice of the Moses Lake Litigation

"Appendix D" is the stipulation for dismissal of the Moses Lake Appeal

"Appendix E" contains notices describing the real property at the Site owned by the Owner Settling Defendants

"Appendix F" is a draft of Proprietary Controls described in Paragraph 13.c.

"Appendix G" is a letter addressing the requirements of Paragraph 79.

## XX.  COMMUNITY RELATIONS

84.    If desired by any Owner Settling Defendant, that Settling Defendant shall propose to EPA its participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Owner Settling Defendants under the Plan.  Owner Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Owner Settling Defendants shall participate in the preparation

of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXI.  MODIFICATION

85.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

86.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States and the State each reserve its right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

87.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIII.  SIGNATORIES/SERVICE

88.     Each undersigned representative of a Settling Defendant to this Consent Decree, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, the Assistant Attorney General for the State, and the Program Manager of the Toxics Cleanup Program, Department of Ecology, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

Consent Decree                              57

89.     Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

90.     Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIV.  FINAL JUDGMENT

91.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

92.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 22nd  DAY OF March, 2011.


*s/Lonny R. Suko*

_____

HON. LONNY R. SUKO
United States District Judge

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

Date: _____          _____

                                                MICHAEL J. ZEVENBERGEN
                                                Senior Counsel
                                                Environmental Enforcement Section
                                                U.S. Department of Justice
                                                c/o NOAA Damage Assessment
                                                7600 Sand Point Way, NE
                                                Seattle, Washington 98115

Date: _____          _____

                                                ROBERT H. FOSTER
                                                Senior Counsel
                                                Environmental Defense Section
                                                U.S. Department of Justice
                                                1961 Stout Street, 8th Floor
                                                Denver, CO 80294

Consent Decree                          60

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund Site

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

Date: _____          _____
                          DANIEL D. OPALSKI
                          Director, Office of Environmental Cleanup
                          United States Environmental Protection Agency,
                           Region 10
                          1200 Sixth Avenue
                          Seattle, WA  98101

Date: _____          _____
                          TED YACKULIC
                          Office of Regional Counsel
                          United States Environmental Protection Agency,
                           Region 10
                          1200 Sixth Avenue
                          Seattle, WA  98101

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund Site

**FOR THE STATE OF WASHINGTON**

Date: _____    _____
                     TED STURDEVANT
                     Director
                     Department of Ecology

Date: _____    _____
                       MICHAEL DUNNING
                       Assistant Attorney General
                       State of Washington

Consent Decree                    62

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund Site

**FOR THE BOEING COMPANY**

Date: _____          _____
                          STEVEN SHESTAG
                          Director of Enterprise Remediation
                          The Boeing Company

Date: _____        _____
                          STEVEN E. RUSAK
                          Counsel for Environment, Health and Safety
                          Office of the General Counsel
                          The Boeing Company

Date: _____        _____
                          MARK W. SCHNEIDER
                          Perkins Coie LLP
                          1201 Third Ave., Suite 4800
                          Seattle, WA 98101-3099

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund
Site

**FOR THE CITY OF MOSES LAKE**


Date: _____     _____
                        JOSEPH K. GAVINSKI
                        City Manager
                        City of Moses Lake
                        South 321 Balsam Street
                        Moses Lake, WA  98837-0244



Date: _____   _____
                        LINDA R. LARSON
                        Marten Law PLLC
                        1191 Second Avenue, Suite 2200
                        Seattle WA  98101

Signature Page for Consent Decree regarding the Moses Lake Wellfield Superfund
Site

**FOR LOCKHEED MARTIN CORPORATION**

Date:  _____          _____
                             MICHAEL J. KRAMER
                             Vice President and Deputy General Counsel
                             Lockheed Martin Space Systems Company
                             Post Office Box 179, M/S 5120
                             Denver, CO 80201

Approve as to form:

Date:  _____        _____
                             ROBERT W. LOEWEN
                             Gibson, Dunn & Crutcher
                             3161 Michelson Drive
                             Irvine, CA 92612